**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Wolf Designs LLC, | No. CV-21-01789-PHX-ROS |
| Plaintiff, | **ORDER** |
| v. | |
| Five 18 Designs LLC, et al., | |
| Defendants. | |

Plaintiff Wolf Designs LLC ("Plaintiff") designs and installs "vehicle wraps," *i.e.* large vinyl graphics or decals applied to car bodies. Defendant Garrett Maxwell owns Defendant Five 18 Designs LLC ("Five 18") (collectively "Defendants"). Five 18 is a direct competitor of Wolf. This suit involves Five 18 and Maxwell allegedly copying Wolf's copyrighted designs and stealing Wolf's customers.

## BACKGROUND

### I.  Factual Background

The factual background is familiar to the parties and the Court. Briefly, and as relevant from the Amended Complaint (Doc. 66), Plaintiff alleges as follows.

Both Plaintiff and Defendants design and install vehicle wraps. (First Amended Verified Complaint, Doc. 66 at ¶¶ 9, 11) ("FAVC"). The First Amended Complaint asserts three claims related to alleged copyright infringement, based on three of Plaintiff's customers allegedly opting to hire Defendants to install vehicle wraps featuring designs Plaintiff had created and copyrighted.

### A. Nash Copyrights

In March 2020, Plaintiff's customer, Nash Powersports ("Nash") commissioned Plaintiff to design and install a custom wrap for a 5th wheel toy-hauler trailer used to haul off-road vehicles. (FAVC at ¶ 19). Plaintiff created a custom graphic design and installed it. (*Id*. at ¶ 20).

After that, Nash "again approached Wolf Designs commissioning Wolf to create and install wrap designs on a Nash truck and box trailer, utilizing the same design theme as with the wrap Wolf previously created." (*Id*. at 21). Plaintiff sent Nash estimates for both the truck wrap and the box trailer wrap on April 5, 2021. (*Id*. at ¶ 22). Nash did not pursue the truck wrap, but with respect to the box trailer, Nash signed and executed the estimate, and paid the deposit on April 9, 2021. (*Id*. at ¶ 23-24). Plaintiff sent Nash a mockup of the box trailer design, which included Plaintiff's logo and copyright notice. (*Id*. at ¶ 25). Plaintiff installed the wrap onto a Nash box trailer. (*Id.* at ¶ 26). Plaintiff published photographs of the design and completed installation work it did for Nash on its website. (*Id.* at ¶ 28).

At some point after this project, Plaintiff alleges Nash commissioned Defendants to copy Plaintiff's design and install a vehicle wrap on Nash's truck using Plaintiff's protected work. (*Id*. at ¶ 30). Defendants installed the wrap and Plaintiff first became aware of this infringement in or around May 2021. (*Id*. at ¶ 31). Defendant Maxwell posted photographs of the completed truck project on his personal Instagram account. (*Id*.; FAVC Ex. M).

### B. Jagged X Truck

Plaintiff's First Amended Complaint asserts that it contracted with its customer Jagged X Racing for the design and installation of a custom wrap incorporating Jagged X's logo onto one of its chase trucks, which Plaintiff installed. (*Id.* at ¶ 34). Plaintiff has a valid copyright for the design, and Plaintiff published a photograph of the Jagged X wrap on its website, including a copyright statement and "All Rights Reserved." (*Id.* at ¶¶ 35-36). On February 23, 2022, Plaintiff became aware of Defendants' alleged misappropriation when Defendants posted a photograph on their Instagram account "advertising its work on

another of Jagged X's trucks that is an exact copy . . . of Wolf's copyright protected Jagged X design." (*Id.* at ¶ 38).

### C. Simon Med Prius

Lastly, Plaintiff alleges Defendants used one of Plaintiff's copyright protected designs on a Toyota Prius. Defendants allegedly used Plaintiff's copyrighted design and Defendant Maxwell posted photographs of the completed vehicle wrap on his personal Instagram page. (*Id.* at ¶ 40).

## II. Procedural Background

The initial Complaint (Doc. 1) included five claims: copyright infringement, violation of the Lanham Act, tortious interference with business expectancies, unfair competition, and "alter ego." Defendants filed a Motion for Judgment on the Pleadings. (Doc. 45). The Court granted the motion in part, dismissing all but the copyright infringement claim. (Doc. 65). Plaintiff then filed the First Amended Complaint, reasserting its copyright infringement claim and amending its claims for tortious interference and unfair competition. Defendants' motion to dismiss (Doc. 68) followed, seeking dismissal of the tortious interference and unfair competition claims.

## ANALYSIS

### I. Motions to Dismiss

A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint" has not adequately shown the pleader is entitled to relief. *Id.* at 679. Although federal courts ruling on a motion to dismiss "must take all of the factual allegations in the complaint as true, [they] 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at

555).

## II. Count 2: Tortious Interference

Plaintiff alleges it had contracts with Nash, Jagged X, and Simon Med (FAVC at ¶ 55) "to create custom designs and wraps for vehicles on various projects and each have an existing business relationship with Wolf Designs going back as far as 2015." (*Id.*) Plaintiff alleges the "estimates" it provided became contracts once the client signed them, approving the mock-up designs, and paid a deposit. (*Id.*) Plaintiffs allege Defendants knowingly interfered in those business relationships by replicating and installing Plaintiff's copyrighted work for them. (*Id.* at ¶ 60).

Tortious interference with contract or business expectancy has five elements under Arizona law: (1) the existence of a valid contractual relationship or business expectancy; (2) defendant's knowledge of the relationship or expectancy; (3) defendant's intentional interference in inducing or causing the breach; (4) defendant's interference must be improper; and (5) resulting damages. *MDY Indus. LLC v. Blizzard Entertainment, Inc.*, 629 F.3d 928, 955 (9th Cir. 2010) (citing *Safeway Ins. Co. v. Guerrero*, 106 P.3d 1020, 1025 (Ariz. 2005)); *ThermoLife Int'l, LLC v. Gaspari Nutrition, Inc.*, 871 F. Supp. 2d 905, 912 (D. Ariz. 2012).

The Court has already dismissed this claim once. In doing so, the Court explained it was unclear from the face of the complaint whether any alleged contract was specific to each individual project—i.e., a contract to create a wrap for the box trailer—or a more general agreement to do business together. The Court warned that a plausible claim would, at the very least, identify the exact contract or expectancy at issue. (Doc. 65 at 15).

Plaintiff has failed to remedy that flaw in its Amended Complaint. As Defendants argue, Plaintiff only identifies one contract in his Amended Complaint, for the box trailer wrap; that contract was completed. (FAVC at ¶¶ 22-26). Accordingly, there is no contract that Plaintiff claims was interfered with. Plaintiff's allegations support that every individual project had its own contract, because Plaintiff would create an estimate for a project, and the contract was executed when the estimate was signed. (FAVC at ¶ 55).

Plaintiff has not alleged that any particular estimate was signed, establishing a contract, before Defendants allegedly replicated that particular copyrighted design.

And while Plaintiff asserts it has sufficiently alleged a "business expectancy" with each of these clients, the Court disagrees. To allege a valid business expectancy, there must be an "actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered." *Dube v. Likins*, 167 P.3d 93, 101 ¶ 19 (Ariz. Ct. App. 2007) (quoting *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 815 (Fla. 1994)); *see also ReBath LLC v. HD Solutions LLC*, No. CV-19-04873-PHX-JJT, 2020 WL 4514934, at *3 (D. Ariz. Jan. 24, 2020) (business expectancy is one that "in all probability would have been completed" had Defendants not interfered). The business expectancy alleged must be more than a "speculative hope." *ThermoLife Int'l*, 871 F. Supp. 2d at 912.

Plaintiff argues it alleged the revenue received from those three clients in the past and that the revenue is now zero, and that he completed vehicle wrap installations as far back as 2015, establishing an ongoing business relationship. (FAVC at ¶¶ 55, 63). But the existence of an "ongoing business relationship" at the relevant time does not automatically establish an "expectancy." An expectancy looks to the future; an ongoing relationship describes the past state of affairs. Even if Plaintiff completed every single vehicle wrap for each of the clients in the past, it has not alleged anything that would suggest "in all probability" the client would have hired Plaintiff again. To the contrary, Plaintiff's allegations suggest its clients in fact did decline to hire Plaintiff for various projects, belying the argument that there was a concrete business expectancy here. (FAVC at ¶¶ 21-23) (Nash "signed and executed estimate for the box trailer wrap" but not the "truck")). Thus, Plaintiff has not alleged enough to show that "in all probability" these clients would have hired Plaintiff to install future vehicle wraps absent Defendants' interference.[1]

---

[1] Even if Plaintiff had alleged a valid business expectancy, it "must also prove the defendant acted with improper motive or improper means." *Directory Ass'ts, Inc. v. Does 1-10*, No. MC 11-00096-PHX-FJM, 2011 WL 5335562, at *3 (D. Ariz. Nov. 4, 2011). Again, an "improper" behavior has not been alleged beyond copyright infringement itself. (*See* FAVC at ¶¶ 64-65 (alleging Defendants offered to "replicate Wolf Designs' copyright protected work")). Additionally, Plaintiff alleges in at least one circumstance, the client,

As already stated, taking Plaintiff's allegations as true, Defendants' use of Plaintiff's copyrighted materials to recreate those designs on its own vehicle wraps supports a copyright claim, not a claim for tortious interference with business expectancy. Since Plaintiff has been given a chance to amend its complaint to state a claim for tortious interference and has failed to do so sufficiently, Count 2 will be dismissed without leave to amend. *See, e.g.*, *Abeyta v. U.S. Postal Serv.*, No. CV-21-00331-TUC-RM, 2022 WL 824251, at *2 (D. Ariz. Mar. 18, 2022) (quoting *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 538 (9th Cir. 1989)) ("Leave to amend need not be given if a complaint, as amended, is subject to dismissal.").

### III. Count 3: Unfair Competition

In response to Defendants' Motion to Dismiss Count 3, Plaintiff has indicated its intention to voluntarily dismiss Count 3. (Doc. 76 at 9-10). Accordingly, Defendants' motion will be granted. Count 3 will be dismissed with prejudice.

Accordingly,

**IT IS ORDERED** Defendants' Motion to Dismiss (Doc. 68) is **GRANTED**. Counts 2 and 3 are dismissed with prejudice.

Dated this 19th day of May, 2023.

Honorable Roslyn O. Silver
Senior United States District Judge

---

Nash, approached Defendants about installing the vehicle wrap—not the other way around. (FAVC at ¶ 30).